Caleb LH Marker (SBN 269721)
    Email: caleb.marker@zimmreed.com
Jessica M. Liu (SBN 358713)
    Email: jessica.liu@zimmreed.com
ZIMMERMAN REED LLP
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Fax: (877) 500-8781

[Additional Attorneys for Plaintiff Listed on Back Cover]

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS FARRELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JACHS NY, LLC, and DOES 1–10,<br><br>Defendant. | Case No. 3:26-cv-1284<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Nicholas Farrell, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Jachs NY, LLC ("Defendant" or "Jachs NY") and makes the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## <u>NATURE OF THE ACTION</u>

1.      This is a case concerning deceptive representations and omissions made by Defendant through its misleading and unlawful pricing, sales, and discounting practices on its websites, which directly violate a California statute and deceive the reasonable consumer.

2.      Defendant Jachs NY sells and markets clothing products online through the Jachs NY website, https://www.jachsny.com/.

3.    Defendant lists all of its products as having continuous discounts ranging between 25% to 80% off. Defendant additionally lists sitewide discounts on all of its products. However, these discounts are actually false discounts intended to misleadingly induce customers into purchasing Defendant's products at increased prices—or to make purchases that otherwise would not have been made—as the products are never actually sold at the higher strikethrough reference prices listed next to the "sale" price.

4.    The products at issue are all goods that have been offered at any time on Defendant's website at a sale or discounted price from a supposedly higher reference price (the "Products").

5.    Defendant's website lists various items on sale or discount, picturing a stricken supposedly former or prevailing market price next to the "sale" price. However, the purported former or prevailing market price listed next to the sales price is not actually the former or prevailing market price at which the product was sold in the previous three months. Instead, it is a false or inflated price used to trick consumers into believing they are receiving a discount on their purchase. It is false because the item has not been listed for sale or sold on the website in the previous three months at the listed former price.

6.    California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

7.    California's False Advertising Law further provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertisement. Cal. Bus. & Prof. Code § 17501. Therefore, the statute specifically prohibits this type of fake discount, where the advertised former price is not the prevailing price during the specified timeframe.

8.    Upon investigation, all or nearly all of the reference prices on the website are false and misleading. They are not former or prevailing market prices at which the products were offered on the websites during the previous three months.

9.    Plaintiff—like hundreds of thousands of other customers—fell prey to Defendant's false, deceptive, and misleading discount scheme. As a result, Defendant has received millions of dollars selling products at misrepresented discounts that do not actually exist.

10.    When purchasing the Products, Plaintiff relied on Defendant's misrepresentations that the Products were on sale and were previously sold at the former strikethrough price listed next to the sale price, as well as the advertisement of sitewide discounts on the website.

11.    Defendant's conduct violated and continues to violate the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; and the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*. Defendant's conduct also constitutes negligent misrepresentation and has unjustly enriched Defendant by the sale of these Products.

12.    Accordingly, Plaintiff brings this civil action to put an end to Defendant's illegal conduct. Through this class action lawsuit, Plaintiff seeks monetary damages, restitution, and declaratory and injunctive relief on behalf of the proposed Class.

## **PARTIES**

13.    Plaintiff Nicholas Farrell is a citizen and resident of Alameda County, California.

14.    Defendant Jachs NY, LLC is a Florida limited liability company that is headquartered in Florida. Defendant is an online retailer that markets and sells clothing products in California and across the United States.

15.    Defendants Does 1–10 were responsible in some manner for the injuries and damages caused to Plaintiff and the Class, but their identities and/or roles are not yet known.

## **JURISDICTION AND VENUE**

16.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which (1) there are at least 100 members, (2) the matter in controversy exceeds $5,000,000 exclusive of interest and costs, and (3) Plaintiff and members of the putative Class are citizens of a state that is different from the states in which Defendant is a citizen.

17.     This Court has personal jurisdiction over Defendant because Defendant has contacts with California that are so continuous and systematic that it is essentially at home in this state. Defendant sold Jachs NY products to consumers in California, including Plaintiff. Defendant regularly conducts and solicits business in California, provides products to persons in the State of California, maintains an interactive commercial website, offers to and does ship products to California, allows customers in California to order products, and derives substantial revenue from customers in California.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's and the Class Members' claims occurred in this District, and Defendant is subject to the Court's personal jurisdiction.

## **BACKGROUND FACTS**

19.     Jachs NY is a clothing company that predominantly markets and sells its products on its website.

20.     Defendant, through its website, has sold hundreds of thousands of units of merchandise to customers in California and nationwide.

## I.     **Jachs NY's Fake Discount Scheme**

21.     Defendant creates the false impression that its Products' regular or former prices are higher than they truly are.

### *A. False Reference Prices*

22.     On any given day most, if not all, products on Defendant's website are represented as being discounted from a higher reference price. On individual listing pages and category listing pages, the supposed mark-downs are represented to consumers by (1) prominently displaying a "crossed-out" or strikethrough reference price next to a sale price, (2) stating "____% off" in highlighted text adjacent to the higher reference price, and (3) depicting the sale price in bold or red text adjacent to the reference price. An example archived screenshot is provided below:

23.    The above image is just one example from Defendant's website that shows how it consistently lists its false discounts on the website.

24.    The below sections describe further the types of deceptive sales schemes instituted by Defendant on its website.

25.    These pricing and advertising practices are deceptive and pressure consumers into purchasing products from Defendant at an inflated price. Defendant intends to mislead consumers into believing that they are receiving a bargain by buying products from its website on sale and at a substantial and deep discount.

**B. Sitewide Discounts**

26.    In addition to discounts listed next to individual products, Defendant also runs sitewide discounts on every product on its website. These include, for example, discounts offering "30% off" and "60% off" and even "80% off" for a limited time period—intended to induce purchases under the guise that the purported discounts are only available for a limited time.

27.    As shown below, Defendant ran continuous sitewide discounts on its products during at least August 2021 to December 2022:

**August 13, 2021**

**November 25, 2021**



**November 29, 2021**



**January 23, 2022**



**January 24, 2022**



**January 29, 2022**



**February 6, 2022**



**February 18, 2022**



**March 4, 2022**



**March 19, 2022**



**April 3, 2022**

**May 12, 2022**



**May 13, 2022**



**May 22, 2022**



**May 24, 2022**



**June 9, 2022**



**July 1, 2022**

**July 5, 2022**



**August 9, 2022**



**August 19, 2022**



**September 6, 2022**



**October 17, 2022**



**November 9, 2022**

**December 6, 2022**



**December 8, 2022**

28.    As shown above, throughout August 2021 through December 2022, there were continuous sitewide discounts routinely available on Defendant's website.

29.    The above photos from Defendant's website are not exhaustive, but are merely examples that demonstrate how it consistently lists its false discounts on the website. Upon investigation by counsel, it appears Defendant has consistently offered site-wide discounts on its website for years.

### C.   Plaintiff Purchased Products that Were Falsely Advertised as Having Discounts

30.    Plaintiff is a resident of Alameda County, California. On or around the following dates, Plaintiff purchased the following products (the "Products") from the Jachs NY website:

      (1) Navy Brushed Heathered Twill Shirt – purchased on November 29, 2022, for $29.00 (reference price of $119)

      (2) Grey Short Sleeve Cotton Linen Shirt – purchased on May 9, 2023, for $38.00 (reference price of $99)

      (3) Dark Grey Printed Stretch Knit Oxford Short Sleeve Shirt – purchased on May 9, 2023, for $38.00 (reference price of $109)

31.    At the time of purchase, Defendant was advertising the Products as having a former sale price of $119, $99, and $109, respectively. The Products' reference prices were listed as strike through reference prices next to red "discount" or "sale" prices that were less than half the supposed value of the reference price. Plaintiff purchased these Products in reliance on these discounts.

32.     However, as evidenced by the images below, Defendant did not list or sell these Products for the strikethrough reference prices listed next to the Products for at least the three months prior to Plaintiff's purchase (and actually much longer).

33.     First, the Navy Brushed Heathered Twill Shirt was purchased at what was presented by Defendant as a roughly 75% discount from the referenced strikethrough price. As shown above, Defendant ran sitewide discounts of up to 80% for at least the three months prior to Plaintiff's purchase of the Navy Brushed Heathered Twill Shirt on November 29, 2022. From August 2021 to at least December 2022, all Products were listed at a continuous discount. Therefore, the strikethrough reference price and corresponding discount on the Navy Brushed Heathered Twill Shirt Product was false.

34.     Plaintiff purchased the Grey Short Sleeve Cotton Linen Shirt for $38.00 on May 9, 2023. This Product had a false reference price of $99, and was pictured like below:



35.     Plaintiff purchased the Dark Grey Printed Stretch Knit Oxford Short Sleeve Shirt for $38.00 on May 9, 2023. This product had a false reference price of $109, and was pictured like the image below:



36.     For at least the three months prior to this purchase (and actually much longer), Defendant listed all of its short sleeve shirts at discounts with false strikethrough reference prices of $109 or $99. None of the short sleeve shirts bought by Plaintiff were ever listed or sold at the reference prices of $99 or $109. Prior to March 2023, Defendant listed these short sleeve shirts at even lower prices with lower strike through reference prices. Defendant did not list or sell the Products at the strikethrough reference prices of $99 or $109. See short sleeve shirt listings below:

**<u>December 9, 2022</u>**

**February 5, 2023**



**March 20, 2023**



**March 21, 2023**



**March 28, 2023**








**March 29, 2023**



FEATURED COLLECTION: SHORT SLEEVE SHIRTS FROM $39

   

Navy Knit Oxford Stretch Short Sleeve Shirt
$54.00 $109.00

Olive Printed Knit Oxford Stretch Short Sleeve Shirt
$54.00 $109.00

Olive Knit Oxford Stretch Short Sleeve Shirt
$54.00 $109.00

Tan Printed Knit Oxford Stretch Short Sleeve Shirt
$54.00 $109.00

**April 2, 2023**



FEATURED COLLECTION: SHORT SLEEVE SHIRTS FROM $39

   

Navy Knit Oxford Stretch Short Sleeve Shirt
$54.00 $109.00

Olive Printed Knit Oxford Stretch Short Sleeve Shirt
$54.00 $109.00

Olive Knit Oxford Stretch Short Sleeve Shirt
$54.00 $109.00

Tan Printed Knit Oxford Stretch Short Sleeve Shirt
$54.00 $109.00

**May 5, 2023**



**May 28, 2023**



1

**June 10, 2023**

2

3

4

5

6

7

8

9

10

11

12

**July 26, 2023**

13



14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**November 10, 2023**

2



3

4

5

6

7

8

9

10

11

12

13

14      37.      As evidenced by Defendant's own website, the short sleeve shirt Products purchased

15    by Plaintiff in May 2023 were not sold at the false reference prices within the three months (and

16    much longer) prior to Plaintiff's purchase. For nearly a year (and likely much longer), Defendant

17    listed these short sleeve shirt Products at discounts with the same or similar reference prices.

18      38.      In addition to the false reference prices listed next to individual products like the one

19    Plaintiff purchased, Defendant also advertises sitewide discounts across its website at all times, as

20    further described above. From at least August 2021 to November 2022 (and likely much longer),

21    Defendant advertised sitewide discounts on all of the products on its website.

22      39.      Plaintiff relied on Defendant's representations on the website that the Products were

23    being offered at a discount and that previously they were listed and sold on the website at the stated

24    reference price within the three months immediately preceding Plaintiff's purchase.

25      40.      The above-listed Products Plaintiff purchased was not substantially marked down or

26    discounted, and any discount he was receiving had been grossly exaggerated.

27

28

41.     For at least the 90-day period prior to Plaintiff's purchase, and even months and years more, Defendant did not list or sell any of the Products for sale on its website at their reference prices.

42.     Plaintiff would not have purchased the Products, and would not have been willing to pay the purported sale price, if he had known the Products were not discounted as advertised, and that he was not receiving the advertised discounts.

43.     Upon information and belief, Defendant enacts the same false discount scheme with many, if not all, of the Products listed on its website

### D.  The Reference Prices Are Not the Prevailing Market Price of the Products, Including During the Rolling 90-day Period Prior to the Offering and/or Purchase

44.     Upon information and belief, Defendant is the sole manufacturer and primary seller of the Products. As the primary seller of the Products, Defendant sets the prevailing market price—most sales are made at Defendant's prices, because Defendant is the one making the sales.

45.     In short, because the Products are most commonly sold by Defendant on its website, they are most commonly sold for the discounted prices that are always available from Defendant (across all Defendant's sales channels), and these prices represent the prevailing market prices.

## II.    Research Shows That Reference Price Advertising Influences Consumer Behavior and Perceptions of Value

46.     The effectiveness of Defendant's deceitful pricing scheme is backed by longstanding research.

47.     "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."[1] Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases."[2] For this reason, the Ninth Circuit in *Hinojos* held that a plaintiff making a claim of deceptive pricing (similar

---

[1] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992).

[2] *Id*. at 56.

to the claim at issue here) had standing to pursue his claim against the Defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013).

48. "[D]ecades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."[3] According to academic studies, "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."[4]

49. Further, consumers are more likely to buy a product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

50. Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[5] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[6]

---

[3] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002).

[4] *Id*.

[5] Khalid Saleh, *How Discounts Affect Online Consumer Buying Behavior*, Invesp, June 16, 2024, https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/ (last visited September 11, 2024).

[6] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers PR Newswire (April 25, 2018), https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html#:~:text=In%2DLanguage%20News-,RetailMeNot%20Survey%3A%20Deals%20and%20Promotional%20Offers%20Drive%20Incremental%20Purchases%20Online,finding%20a%20coupon%20or%20discount (last visited September 11, 2024).

51.     Another academic journal explains that "[r]eference price ads strongly influence consumer perceptions of value … Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when … the retailer highlights the relative savings compared with the prices of competitors … [T]hese bargain assurances (Bas) change consumers' purchasing behavior and may deceive consumers."[7]

52.     "[R]esearch has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."[8]

53.     "[R]eference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product."[9] This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[10]

54.     Accordingly, research confirms that deceptive advertising through false reference pricing is intended to, and does, influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or purchase products from a specific retailer.

### A. *Consumers Suffered Harm*

55.     Based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are the regular prices at which Defendant usually sells its Products.

---

[7] Joan Lindsey-Mullikin & ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

[8] Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

[9] Jerry B. Gotlieb & Cyndy Thomas Fitzgeral, *An Investigation Into The Effects of Advertised References Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990).

[10] *Id.*

56.     Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular or former price is the advertised regular or former price and that they will receive the advertised discount from the regular or former purchase price

57.     Plaintiff and consumers paid a "price premium" for the Products. If the reference prices were omitted from the product listings, the Plaintiff would not have purchased the Products, or would not have been willing to pay the purported sale price for the Products.

58.     Also, as further described above, Plaintiff and consumers are more likely to buy the Products if they believe that the product is on sale and that they are getting Products with a higher regular or former price at a substantial discount.

59.     Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. Not only do Defendant's Products have a market value lower than the falsely promised regular price; the value of the products is also lower than the "sale" price. By using false reference pricing, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products that it would not be able to charge absent the misrepresentations described above, and consumers received a product worth less than the price paid.

### III.    Defendant's Deceptive Pricing Practices Violate Federal and California State Law

60.     The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). Under 16 C.F.R. § 233.1, which is titled Former Price Comparisons, the FTC prohibits such misleading price comparisons as the ones employed by Defendant:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the *former price* is the actual, bona fide price at which the article was offered to the public *on a regular basis for a reasonably substantial period of time*, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an *artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction* – the "bargain" being advertised *is a false one*; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50 in order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" ***This is obviously a false claim***. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he ***never offered the article at all***; he might feature a price which was ***not used in the regular course of business***, or which was ***not used in the recent past*** but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was ***not maintained for a reasonable length of time***, but was immediately reduce.

16 C.F.R. § 233.1 (emphasis added).

61.     The FTCA expressly prohibits the advertising of fictitious former prices, like the scheme employed by Defendant, regardless of whether the product advertisements and representations use the words "regular," "original," or "former" price:

(e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

16 C.F.R. § 233.1.

62.    Defendant's pricing scheme directly violates the FTCA.

63.    In addition, Section California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

64.    California's False Advertising Law further provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertisement. Cal. Bus. & Prof. Code § 17501.

65.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

66.    And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

67.    Here, as described above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices without the intent to sell goods having those former prices. Defendant made false and misleading statements of fact concerning the reason for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engaged in unlawful and deceptive business practices.

## CLASS ALLEGATIONS

68.    Plaintiff brings this action individually and on behalf of all others similarly situated. The proposed class is defined as:

**The Class**:

All persons residing in the State of California who, during the applicable limitations period, purchased one or more items from Defendant, at a represented discount from a higher reference price.

69.    Excluded from the Class is Defendant, its subsidiaries and affiliates, officers, directors, the members of their immediate families, and any entity in which any Defendant has a controlling interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded are the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

70.    Plaintiff reserves the right to modify or amend the definition of the proposed Class if necessary, before this Court determines whether certification is appropriate.

71.    This case is properly brought as a class action under Fed. R. Civ. P. 23(b)(2) and (b)(3) and all requirements are met for the reasons set forth in the following paragraphs.

72.    *Numerosity*. The members of the Class are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to discovery, the Class consist of many thousands of members, the identity of whom are within the exclusive knowledge of Defendant and can be ascertained only by resorting to Defendant's records, discovery, and other third-party sources.

73.    *Commonality*. There are numerous questions of law and fact common to the Class relating to Defendant's business practices challenged herein, and those common questions predominate over any questions affecting only individual Class members. The common questions include:

  o  Whether Defendant's labeling, advertising, and marketing of the Products is false and misleading;

  o  Whether Defendant advertised false reference prices on Products offered on its website;

  o  Whether Defendant advertised price discounts from the false reference prices on the Products offered on the websites;

o   Whether the Products listed on Defendant's websites were offered at their reference price for a reasonably substantial period of time during the three months prior to being offered at prices that were discounted from their reference prices;

o   Whether the Products listed on Defendant's websites were offered at their reference price within the three months preceding purchases by Plaintiff and class members;

o   Whether Defendant's misrepresentations were material to reasonable consumers;

o   Whether Defendant engaged in unlawful or unfair conduct prohibited by the California UCL;

o   Whether Defendant engaged in conduct prohibited by the California FAL;

o   Whether Defendant violated the CLRA's prohibition on unfair methods of competition and/or unfair and deceptive practices;

o   Whether Defendant violated the FTCA;

o   Whether Defendant harmed the Plaintiff and members of the Class;

o   The proper measure of damages; and

o   The declaratory and injunctive relief to which the Class is entitled.

74.    *Typicality.* Plaintiff's claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practices engaged in by Defendant, as described herein.

75.    *Adequacy of Representation.* Plaintiff is an adequate representative of the Class because Plaintiff has sustained damage as a result of Defendant's uniform conduct. In addition:

o   Plaintiff is committed to the vigorous prosecution of this action individually and on behalf of and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

o   There is no hostility of interest between Plaintiff and the unnamed Class members;

CLASS ACTION COMPLAINT FOR DAMAGES - No. 3:26-cv-1284

o   Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

o   Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal work associated with this type of litigation.

76.   *Predominance.* The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

77.   *Superiority.* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation and since the financial resources of Defendant are significant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard that might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

78.   All conditions precedent to bringing this action have been satisfied and/or waived.

**FIRST CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**
**(On behalf of Plaintiff and the Class)**

79.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

80.   Plaintiff and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17200.

81.    The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

82.    Defendant violated the UCL by engaging in "unlawful, unfair, and fraudulent business ats or practices" and engaging in "unfair, deceptive, untrue or misleading advertising," including advertising false and deceptive reference prices on its Products. Cal. Bus. & Prof. Code § 17200.

**a.  *Unlawful Prong***

83.    As a result of engaging in the conduct alleged in this Complaint, Defendant has violated the UCL's proscription against engaging in "unlawful" conduct by virtue of their violations of the following laws:

(1)    **California Bus. & Prof. Code §§ 17500, 17501**: As further detailed in this Complaint, Defendant violated California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 and 17501.

(2)    **The Federal Trade Commission Act**: As detailed in this Complaint, Defendant violated 16 C.F.R. §§ 233.1 and 233.5.

(3)    **Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(a)**: As alleged below, Defendant's conduct, individually and collectively, violates section 1770(a)(5), (7), (9), and (13) of the CLRA. Therefore, Defendant has also violated the UCL's "unlawful" provision.

84.    Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date. Unless restrained and enjoined, Defendant will continue to engage in the unlawful conduct described herein.

85.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the Class. As described herein, Defendant made false and deceptive advertisements and representations regarding the reference prices on the Products it claimed were on sale. But for Defendant's unlawful and unfair conduct, Plaintiff and Class members would not have purchased the Products.

86. Plaintiff has suffered injury in fact and has lost money as a result of Defendant's conduct.

87. Accordingly, Plaintiff and Class Members seek restitution from Defendant of all money obtained from Plaintiff and the Class as a result of Defendant's unlawful acts.

**b.  *Unfair Prong***

88. As a result of engaging in the conduct alleged herein, Defendant has violated the UCL's proscription against "unfair" business practices.

89. Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

90. Defendant's unfair conduct alleged in the Complaint is illegal, deceptive, unethical, and unscrupulous. Under federal and state law, making false and deceptive claims about products being marketed and sold to consumers violates the UCL.

91. Defendant's deceptive marketing gave consumers the false impression that their products were regularly listed or sold on the websites for a substantially higher price in the recent past than they were and, thus, led to the false impression that Defendant's products were being sold at a discount to a regular price.

92. Furthermore these acts and practices offend public policy by violating the CLRA and the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code 17500, *et seq.*

93. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers.

94. Therefore, Defendant's conduct was and continues to be "unfair."

95. Defendant's violations of the UCL continue to this day. Unless restrained and enjoined, Defendant will continue to engage in the unfair conduct described herein, and Plaintiff would buy again from Defendant if he knew that the pricing misrepresentations were halted and if they had the opportunity to evaluate the actual prevailing price and actual discount prices of the Products.

96.    Defendant's violations of the UCL continue to this day. Unless restrained and enjoined, Defendant will continue to engage in the unfair conduct described herein.

97.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff, as well as the Class members.

98.    The harm to Plaintiff and members of the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein.

99.    Accordingly, Plaintiff and the Class seek restitution from Defendant of all money obtained from Plaintiff and the Class members as a result of Defendant's unfair competition.

### c.    Fraudulent Prong

100.    As a result of engaging in the conduct alleged herein, Defendant has violated the UCL's proscription against "fraudulent" business practices.

101.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant affirmatively misrepresented the reference prices of products which, in turn, misled and deceived consumers into believing that they were buying products at substantially discounted prices. Defendant's deceptive marketing gave consumers the false impression that its products were regularly listed or sold on the website for a substantially higher price in the previous three months. Because Defendant misled Plaintiff and members of the Class, Defendant's conduct was "fraudulent."

102.    Defendant's advertisements concerning the reference price of Products on its websites were fraudulent business acts in violation of the UCL. These acts were reasonably likely to deceive consumers, and in fact did deceive Plaintiff and induce him into purchasing Defendant's Products.

103.    Defendant knew its Products were not actually sold at the higher reference price for a three month period of time preceding Plaintiff's and class members' purchases.

104.    Defendant had a duty to disclose the truth about its pricing deception, including that the reference prices advertised on its website were not, in fact, prices at which Defendant's items

were listed or sold on the website in the previous three months, but in truth, the products never (or rarely) were offered or sold at the reference prices.

105.    Defendant made these statements with the intention that Plaintiff would see them and rely on them to purchase their Products, and, in fact, Plaintiff did rely on Defendant's fraudulent misrepresentations on Defendant's websites when purchasing the Products.

106.    If not for Defendant's fraudulent acts and practices, Plaintiff would not have purchased the Products.

107.    As a result, Plaintiff and Class Members suffered substantial injury and lost money due to Defendant's conduct.

108.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and Class Members.

109.    Plaintiff requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future.

110.    Plaintiff has no adequate remedy at law to address Defendant's unlawful conduct. The legal remedies available to Plaintiff are not equally prompt, certain, efficient, or complete as equitable relief. Whereas equitable claims may be tried by the court, legal claims are tried by jury, which may result in delay or additional expense. Further, the Court's discretion in fashioning equitable relief extends broader than legal damages and can be awarded in situations where establishing entitlement to damages may prove difficult, including under claims, such as the UCL, where the necessary elements differ from those governing legal claims.

**SECOND CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S FALE ADVERTISING LAW ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq***
**(On behalf of Plaintiff and the Class)**

111.    Plaintiff hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

112.    This Claim is brought on behalf of the California class, which is referred to in this section as the "Class."

113.    The California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*., by states, in part, that:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, **which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…**

Cal. Bus. & Prof. Code § 17500. (emphasis added).

114.    A separate section of the FAL, Cal. Bus. & Prof. Code § 17501, also provides that:

> For the purposes of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a ***former price*** of any advertised thing, unless the alleged former price was the ***prevailing market price*** as above defined within ***three months next immediately preceding*** the publication of the advertisement of unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501. (emphasis added).

115.    As used in the FAL:

> (a) The term "prevailing market price" refers to the "retail price" if the offer is at retail."

(b) The term "advertised thing" refers to the exact same product offered—***not*** an equivalent or similar product. *People v. Superior Ct. (J.C. Penney Corp.)*, 24 Cal App. 5th 376, 412 (2019) ("if the advertisement specifies a precise item—say, by reference to name, brand, or other distinctive features … the market and therefore the market price is potentially determined on the basis of sales of ***that item only***.") (emphasis added).

(c) The term " 'former price' … includes but is not limited to the following words and phrases when used in connection with advertised prices: 'formerly—,' 'regularly—,' 'usually—,' 'originally—,' 'reduced from ___,' was ___ now __,' '___% off.'" 4 Cal. Code Regs., § 1301 (emphasis added).

(d) The "three-month period is properly construed as a 'rolling' period, that is, one whose beginning and end changes each day, thus requiring a daily recalculation of the prevailing market price during the three-month period." *People v. Superior Ct. (J.C. Penney Corp.)*, 24 Cal App. 5th 376, 416 n.26 (2019) (emphasis added).

116. Defendant violated Cal. Bus. & Prof. Code § 17500.

117. Defendant violated Cal. Bus. & Prof. Code § 17501.

118. As alleged more fully above, Defendant advertises former prices along with discounts on its websites. Defendant does this, for example, by crossing out a higher price (e.g. $150) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices denoted as regular prices from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendant charges before the discount went into effect.

119. The reference prices advertised as former or regular prices on Defendant's websites are not former or regular prices under the FAL. Defendant rarely, if ever, offered Products on the websites at the reference prices within three months immediately preceding the publication of the reference prices. Additionally, the reference prices shown were not the prevailing market prices for the Products in the three months immediately preceding the publication.

120.    Defendant did not verify that the advertised reference prices were the prevailing market prices within the preceding three months. On information and belief, Defendant had no policies or procedures to verify and update the reference prices on a daily basis.

121.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the false reference prices when purchasing Defendant's Products. Defendant's misrepresentations were a substantial factor in the Plaintiff's purchase decisions.

122.    Plaintiff relied on Defendant's false advertisements with regard to the Products, at the time of purchase.

123.    As a result of Defendant's violation of the FAL, Plaintiff and Class Members suffered substantial injury and lost money.

124.    Pursuant to Cal. Bus. & Prof. Code § 17535, this Court has the power to award such equitable relief, including but not limited to an order declaring the reference prices listed on Defendant's Products' to be unlawful, an order enjoining Defendant from engaging in any such further unlawful conduct, and an order directing Defendant to refund to Plaintiff and Class Members all monies wrongfully collected as a result of its false advertisements.

125.    Plaintiff has no adequate remedy at law to address Defendant's unlawful conduct. The legal remedies available to Plaintiff are not equally prompt, certain, efficient, or complete as equitable relief. Whereas equitable claims may be tried by the court, legal claims are tried by jury, which may result in delay or additional expense. Further, the Court's discretion in fashioning equitable relief extends broader than legal damages and can be awarded in situations where establishing entitlement to damages may prove difficult, including under claims, such as the FAL, where the necessary elements differ from those governing legal claims.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code §§ 1750, *et seq*.)**
**(On behalf of Plaintiff and the Class)**

126.    Plaintiff hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

127.    Plaintiff and members of the Class are "consumers," as that term is defined by Civil Code § 1761(d), because they purchased Products for personal, family, or household purposes.

128.    Plaintiff and Class members have engaged in a "transaction" with Defendant, as that term is defined by Civil Code § 1761(e).

129.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for purposes of the CLRA, and was undertaken by Defendant in transactions intended to result in, and which resulted in, the sale of goods or services to consumers.

130.    As described more fully above, Defendant made and disseminated untrue and misleading statements of fact in its advertisements to class members. Defendant did this by using fake reference prices, i.e., reference prices that are not the prevailing market price, and/or were not the prevailing market price within the three months preceding the publication of the discount, and advertising fake discounts.

131.    As a result of Defendant's conduct, Plaintiff and Class members purchased Defendant's Products for their use.

132.    By engaging in the conduct described herein, Defendant has violated the following subdivision of California Code § 1770(a) by:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have …
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> (9) Advertising goods or services with intent not to sell them as advertised.
>
> (13) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

133.    Regarding section 1770(a)(13), Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because (a) no true price reductions existed in that Defendant's Products were rarely, if ever, offered for sale and/or sold on

the websites at the higher reference prices, let along on a regular basis within the three months immediately preceding the publication of the reference prices, (b) the reference prices Defendant advertised in connection with its Products are not prevailing market prices because, on information and belief, the Products were not sold elsewhere at the reference prices on a regular basis within the three months immediately preceding the publication of the reference prices, and (c) Defendant falsely represents the Products as on sale for a limited time when in truth it appears they are perpetually sold at the advertised "sale" prices.

134.    With regard to sections 1770(a)(5), (7), and (9), Defendant advertised and represented Products on the websites with the "intent not to sell" them as advertised and misrepresenting product characteristics and standards because, as explained herein, the false reference prices advertised in connection with products offered on the website misled and continue to mislead customers into believing the Products were previously offered for sale and/or sold on the websites at the higher reference prices during the three months preceding the advertisement.

135.    Defendant intended for Plaintiff and the Class to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged above.

136.    Defendant's violations of the CLRA proximately caused injury in fact to Plaintiff and the Class.

137.    Plaintiff reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff would not have purchased the items he purchased from Defendant. Plaintiff's reliance was a substantial factor in causing him harm.

138.    Pursuant to Cal. Civ. Code § 1782(d), Plaintiff, individually and on behalf of the Class, seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

139.    On October 3, 2025, pursuant to Cal. Civ. Code § 1782(a), Defendant was sent in writing by certified mail, notice of the violations of Section 1770 of the CLRA, which notification demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

140.    Defendant failed to rectify or agree to rectify the problems associated with the actions detailed above or give notice to all consumers within 30 days of receipt of the CLRA notice. Accordingly, Plaintiff seeks damages, as permitted and appropriate.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and members of the Class, respectfully request that the Court:

a.  Certify this case as a class action, designating Plaintiff as class representatives and designating the undersigned as Class Counsel;

b.  Declaring that Defendant's conduct violates the statutes set forth above;

c.  Award Plaintiff and the Class actual damages in an amount according to proof;

d.  Award Plaintiff and the Class restitution in an amount to be proven at trial;

e.  Award Plaintiff and the Class pre-judgment interest in the amount permitted by law;

f.  Award Plaintiff and their attorneys fees and costs as permitted by law;

g.  Declare Defendant's practices outlined herein to be unlawful;

h.  Grant equitable and/or injunctive relief, including to enjoin Defendant from engaging in the practices outlined herein;

i.  Grant Plaintiff and the Class a trial by jury;

j.  Grant leave to amend these pleadings to conform to evidence produced at trial; and

k.  Grant such other relief as the Court deems just and proper, including all forms of relief provided for under the UCL, CLRA, and FAL.

## JURY DEMAND

Plaintiff, by counsel, demand a trial by jury.

Dated: February 12, 2026                    Respectfully submitted,

*/s/ Charles R. Toomajian III*

**ZIMMERMAN REED LLP**
Charles R. Toomajian III (SBN 302153)
1100 IDS Center
80 South 8th St.
Minneapolis, MN 55402
Tel: (612) 852-3000
charles.toomajian@zimmreed.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ZIMMERMAN REED LLP**
Caleb LH Marker (SBN 269721)
Jessica M. Liu (SBN 358713)
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Fax: (877) 500-8781
caleb.marker@zimmreed.com
jessica.liu@zimmreed.com

**JENNINGS & EARLEY PLLC**
Winston S. Hudson*
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Tel: (601) 270-0197
chris@jefirm.com
tyler@jefirm.com
winston@jefirm.com

* *Pro Hac Vice* application to be submitted.

*Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT FOR DAMAGES - No. 3:26-cv-1284